**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JORDAN SOMERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OLIPOP, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jordan Somers ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Olipop, Inc. ("Defendant" or "Olipop"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit on behalf of himself and similarly situated consumers who purchased Olipop prebiotic soda (the "Products").

2. Over the last five years, companies like Olipop and Poppi[1] have popularized prebiotic sodas—soft drinks with prebiotic fiber that supposedly boost digestive health. Since that time, the prebiotic soda market has surged to become a multi-billion-dollar industry. Olipop sold $400 million of the Products in 2024 and the company was recently valued at $1.85 billion.

3. Defendant's labeling on each of Products touts that it contains "Prebiotics" and that it "Supports Digestive Health." But the Products each contain only 6 to 9 grams of prebiotic

[1] Poppi recently agreed to an $8.9 million settlement to resolve claims that its digestive health representations regarding prebiotics were misleading. *In re VNGR Beverage, LLC Litig.*, 4:24-cv-03229-HSG (N.D. Cal.).

fiber, an amount too low to cause any meaningful digestive health benefits. In fact, studies show that prebiotics only begin to benefit consumers when they ingest 12 grams or more daily for at least one month. Thus, in order to reap the benefits of prebiotics, consumers would have to drink at least two of the Products every day for a month. And because the Products contain up to 5 grams of sugar per can, consumers would also ingest an additional 10 grams of sugar per day (20% of the FDA's daily recommended intake), negating any benefits from prebiotics.

4. Accordingly, despite Defendant's alluring "prebiotic" marketing claims and promises that the Products "Support[] Digestive Health," as one nutritionist bluntly explained: the Products "are basically sugared water," which has been shown to actually harm digestive health.

5. Plaintiff has purchased the Products. Now, on behalf of himself and all others similarly situated, he asserts claims for violations of New York General Business Law §§ 349 and 350.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

7. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

9. Plaintiff Jordan Somers is a citizen of New York who resides in Brooklyn, New York. Mr. Somers has purchased the Products for himself numerous times during the applicable statute of limitations. For example, in or around November 2025, he purchased Olipop Crisp Apple rom a bodega in Brooklyn, New York for approximately $2.59. In purchasing the Products, Mr. Somers relied on Defendant's labeling representation that the Products "Support[] Digestive Health." Had Mr. Somers known that Defendant's representations were misleading, and the Products would not improve his digestive health, he would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

10. Defendant Olipop Inc. is a corporation organized under the laws of Delaware, with a principal place of business in Oakland, California. Defendant conducts business in this District and throughout the state of New York. Defendant formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

11. "Prebiotics" are a type of dietary fiber that stimulate the growth of healthy bacteria in the gut known as probiotics. Instead of being digested by the body, these prebiotic fibers travel to the large intestine, where—when they are consumed in sufficient quantities—they promote the growth of healthy gut bacteria that aid digestion and regulate the immune system.

12. Defendant conspicuously represents on the Products' label that Olipop contains "Prebiotics" and that it "Supports Digestive Health":




13. Defendant makes these claims about the supposed health benefits of the Products in an effort to capitalize on the growing market for healthy drinks. Indeed, health-conscious consumers are willing to pay a price premium for products labeled and advertised as healthy or has having particular health benefits.

14. But, unfortunately for consumers, drinking Olipop will not positively impact their digestive health unless they drink two or more cans of its every day for at least a month.

The prebiotics in Olipop are inulin, a type of fiber derived from plant material. When ingested in sufficient quantities, inulin supports digestive health because it is fermented by gut bacteria and causes the body to produce short-chain fatty acids (SCFAs)—organisms in the gut that help to maintain immune homeostasis, glucose homeostasis, and intestinal barrier integrity.

15. A recent study, however, shows that SCFAs are not impacted by small amounts of inulin such as those in the Products. Participants in this study were given doses of 5 grams and 7.5 grams of inulin every day for 3 weeks. Ultimately, the study concluded that inulin by itself did not create a scientifically significant positive change in participants' SCFAs. As such, low levels of inulin, like those in the Products, do not provide the key benefits associated with prebiotic intake.

16. And if consumers were two drink two cans of the Products every day for a month, in order to consumer sufficient quantities of inulin, that would result in them consuming an extra 10 grams of sugar per day, which is 20% of the FDA's daily recommended intake. Consuming sugar at this rate would not only counteract any prebiotic benefits of the Products, but it would actually be detrimental to consumers' health.

17. Many studies have examined the deleterious effects of sugar on gut health, including a recent study that found that "[h]igh sugar intake seems to stagger the balance of microbiota [in the gut] . . . to have increased pro-inflammatory properties, decreased immune-regulatory functions and decreased capacity to regulate epithelial [body tissue] integrity."

18. Another study conducted at Columbia University found that "dietary sugar alters the gut microbiome, setting off a chain of events that leads to metabolic disease, pre-diabetes, and weight gain."

19. As such, drinking enough of the Products to obtain any prebiotic benefit also inherently means ingesting enough sugar to negate those same benefits.

20. Additionally, on average, Americans already maintain high-sugar diets. The Center for Disease Control (CDC) suggests that people over the age of two should consume no more than 12 teaspoons of added sugar daily (approximately 48 grams of sugar). However,

overall, Americans consume 17 teaspoons of added sugar every day (approximately 68 grams of sugar).

21. This means that drinking any amount of the Products (each of which contain up to 5 grams of sugar) cannot counteract the negative effects of high-sugar diets that are already pervasive across America, and consuming two of the Products each day (amounting to up to 10 grams of additional grams of sugar) will only worsen the problem.

22. Defendant does not specify the number of cans of the Products that a consumer would have to drink to get enough prebiotics to benefit gut-health. As such, reasonable consumers understand Defendant's claims that the Products contain "Prebiotics" and that they "Support[] Digestive Health" to mean that even one can of the Products will provide them with some benefit. But that is untrue. Nor would consumers understand that by ingesting the requisite number of cans they would necessarily also be ingesting large quantities of sugar that would counteract any potential benefits.

## CLASS ACTION ALLEGATIONS

23. Plaintiff seeks to represent a class defined as all persons in the New York who, during the maximum period of time permitted by law, purchased the Products for personal, family, or household consumption, and not for resale (the "Class").

24. **Numerosity Fed. R. Civ. P. 23(a)(1).** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

25. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)).**

There is a well-defined community of interest in the questions of law and fact involved in this case. Common questions of law and fact that exist as to all Class members and predominate over questions affecting only individual Class members include, but are not limited to:

(a) the amount of prebiotics in the Products;

(b) the amount of prebiotics necessary to improve digestion;

(c) the harmful impact of sugar in the Products;

(d) whether Defendant's marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and misleading; and

(e) whether Plaintiff and members of the Class have suffered damages as a result of Defendant's actions, and the amount thereof.

26. **Typicality (Fed. R. Civ. P. 23(a)(3)).** The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

27. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

28. **Superiority (Fed. R. Civ. P. 23(b)(3)).** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Even if every member of the Class could afford to pursue individual litigation, the court system could not. Individualized litigation would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also increase the delay and expense to all parties and would present the potential for varying, inconsistent, or

contradictory judgments—magnifying the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. In contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues would ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION
## COUNT I

### Violation of the New York General Business Law § 349

29. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

30. Plaintiff brings this cause of action on behalf of himself and members of the Class against Defendant.

31. Plaintiff and Class members are "persons" within the meaning of the GBL § 349(h).

32. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

33. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

34. Defendant engaged in deceptive acts and practices by marketing the Products as containing prebiotics and in claiming that they "Support[] Digestive Health" because the Products do not contain sufficient quantities of prebiotic fiber to confer any benefits to

consumers. And, if consumers did drink enough of the products to reach the necessary threshold for the benefits of prebiotics, any such benefits would be counteracted by the inclusion of sugar in the Products.

35. Defendant's deceptive acts and practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

36. Plaintiff and the Class members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

37. Defendant's actions set forth above occurred in the conduct of trade or commerce.

38. The foregoing deceptive acts and practices were directed at consumers.

39. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the quality of the Products.

40. Plaintiff and the Class members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

41. On behalf of himself and other members of the Class, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50,

whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**COUNT II**

**Violation of the New York General Business Law § 350**

42. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

43. Plaintiff brings this cause of action on behalf of himself and members of the Class against Defendant.

44. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

45. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised the Products as containing "Prebiotics" that "Support[] Digestive Health" even though the Products do not contain sufficient quantities of prebiotic fiber to confer any benefits to consumers. And, if consumers did drink enough of the products to reach the necessary threshold for the benefits of prebiotics, any such benefits would be counteracted by the inclusion of sugar in the Products.

46. These misrepresentations and omissions were consumer-oriented and were likely to mislead a reasonable consumer acting reasonably under the circumstances.

47. This misrepresentation has resulted in consumer injury or harm to the public interest.

48. As a result of this misrepresentation, Plaintiff and Class members have suffered economic injury because: (i) they would not have purchased the Product had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and Class members have been damaged either in the

full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

49. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and Class members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class and, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(g) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: December 17, 2025 **ARISOHN LLC**

By: */s/ Joshua D. Arisohn*
Joshua D. Arisohn

Joshua D. Arisohn
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Attorney for Plaintiff*